ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA              :

    - v. -                              :    **SUPERSEDING INDICTMENT**

DANIEL PAGANO,                        :    ~~S1 13 Cr. 600 (RA)~~  S4
    a/k/a "Danny,"                       :    ~~S3~~
    and                                  :
MICHAEL PALAZZOLO,                    :    14 CRIM 523
                   Defendants.        :

- - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/5/14

## COUNT ONE

### (Racketeering Conspiracy)

The Grand Jury charges:

    1.    At all times relevant to this Indictment, DANIEL PAGANO, a/k/a "Danny," the defendant, was a Captain of the Genovese Organized Crime Family of La Cosa Nostra (the "Genovese Organized Crime Family"), and MICHAEL PALAZZOLO, the defendant, was an associate of the Genovese Organized Crime Family. The Genovese Organized Crime Family was a criminal organization whose members and associates engaged in crimes including extortion, loansharking, gambling, and other crimes.

    2.    The Genovese Organized Crime Family, including its leadership, membership, and associates, constituted an "enterprise," as that term is defined in Title 18, United States Code, Section 1961(4) -- that is, a group of individuals

associated in fact. This enterprise was engaged in, and its activities affected, interstate and foreign commerce. The Genovese Organized Crime Family was an organized criminal group based in New York City that operated in the Southern District of New York and elsewhere and constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3. The Genovese Organized Crime Family was part of a nationwide criminal organization known by various names, including the "Mafia" and "La Cosa Nostra" ("LCN"), which operated through entities known as "Families." In addition to the Genovese Organized Crime Family, five other Families operated in the New York City and New Jersey area, namely, the Gambino Organized Crime Family of LCN, the Luchese Organized Crime Family of LCN, the Colombo Organized Crime Family of LCN, the Bonanno Organized Crime Family of LCN, and the Decavalcante Organized Crime Family of LCN.

4. The Genovese Organized Crime Family operated through groups of individuals known as "crews" and "regimes," most of which were based in New York City. Each "crew" had as its leader a person known as a "Caporegime," "Capo," "Captain," or "Skipper," and consisted of "made" members, sometimes known

2

as "Soldiers," "wiseguys," "friends of ours," and "good fellows." Soldiers were aided in their criminal endeavors by other trusted individuals, known as "associates," who sometimes were referred to as "connected" or identified as "with" a Soldier or other member of the Family. Associates participated in the various activities of the crew and its members. In order for an associate to become a made member of the Family, the associate must first be of Italian descent and typically needed to demonstrate the ability to generate income for the Family and/or the willingness to commit acts of violence. Each Capo was responsible for supervising the criminal activities of his crew and providing Soldiers and associates with support and protection. In return, the Capo typically received a share of the illegal earnings of each of his crew's Soldiers and associates, which was sometimes referred to as "tribute."

5. Above the Capos were the highest-ranking members of the Genovese Organized Crime Family, commonly referred to as the "Administration." The head of the Genovese Organized Crime Family was known as the "Boss," who was ordinarily assisted by an "Underboss" and a "Consigliere," or counselor. The Boss, Underboss, and Consigliere were responsible for, among other things, setting policy, resolving disputes between and among

members of the Genovese Organized Crime Family, and resolving disputes between members of the Genovese Organized Crime Family and members of other criminal organizations. The Administration of the Genovese Organized Crime Family was also responsible for overseeing the criminal activities of the Family's Capos, Soldiers and associates, and was at times called upon to make decisions regarding those criminal endeavors.

6. The Boss, Underboss, and Consigliere supervised, supported, protected, and disciplined the Capos, Soldiers, and associates, and regularly received reports regarding their various activities. In return for their supervision and protection, the Boss, Underboss, and Consigliere typically received part of the illegal earnings of each crew.

7. The Genovese Organized Crime Family has taken significant steps to protect and insulate its Administration members from detection and scrutiny by law enforcement. These steps include appointing multi-member committees, and/or "panels," to perform the function of Administration positions, including the Boss, and to oversee the daily affairs of the Genovese Organized Crime Family; and naming temporary, or "Acting" Bosses and other Administration positions.

## The Defendants

8. At all times relevant to this Indictment, DANIEL PAGANO, a/k/a "Danny," the defendant, was a Captain of the Genovese Organized Crime Family, and MICHAEL PALAZZOLO, the defendant, was an associate of the Genovese Organized Crime Family. In those capacities, PAGANO and PALAZZOLO participated in and profited from various crimes, which they committed along with other members and associates of the Genovese Organized Crime Family.

## Purposes of the Enterprise

9. The purposes of the enterprise included the following:

    a. Enriching the leaders, members, and associates of the enterprise through extortion, loansharking, gambling, and other crimes;

    b. Preserving and augmenting the power, territory, and financial profits of the enterprise through intimidation, violence, and threats of physical and economic harm; and

    c. Keeping victims and citizens in fear of the enterprise and its leaders, members, and associates by: (i) identifying the enterprise, its members, and its associates

with La Cosa Nostra or the "Mafia;" (ii) causing and threatening to cause economic harm; and (iii) committing and threatening to commit physical violence.

### The Racketeering Conspiracy

10. From approximately in or about 2009, up to and including in or about February 2012, in the Southern District of New York and elsewhere, DANIEL PAGANO, a/k/a "Danny," and MICHAEL PALAZZOLO, the defendants, and others known and unknown, being persons employed by and associated with the racketeering enterprise described in Paragraphs 1 through 9 above, namely, the Genovese Organized Crime Family, which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to violate Title 18, United States Code, Section 1962(c), to wit, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of multiple:

(a) Acts and threats involving extortion, in violation of New York State Penal Law, Sections 155.40, 105.10, and 110.00;

(b) Acts indictable under Title 18, United States Code, Section 1951 (relating to extortion);

(c) Acts indictable under Title 18, United States Code, Sections 892 and 894 (relating to extortionate credit transactions);

(d) Acts involving the operation of illegal gambling business, in violation of New York State Penal Law, Sections 225.00, 225.05, and 225.10; and

(e) Acts indictable under Title 18, United States Code, Section 1955 (relating to the prohibition of illegal gambling businesses).

11. It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

(Title 18, United States Code, Section 1962(d).)

## COUNT TWO

### (Conspiracy To Commit Extortion)

The Grand Jury further charges:

12.  From at least in or about March 2012, up to and including in or about October 2012, in the Southern District of New York and elsewhere, MICHAEL PALAZZOLO, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit extortion, as that term is defined in 18 U.S.C. § 1951(b)(2), by obtaining money and property from and with the consent of another person, which consent would have been and was induced by the wrongful use of actual and threatened force, violence, and fear, and thereby would and did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in 18 U.S.C. § 1951(b)(3), to wit, PALAZZOLO and other co-conspirators, not named as defendants herein, used threats of force to attempt to collect payment from an individual who they believed robbed one of the co-conspirators of marijuana.

(Title 18, United States Code, Section 1951.)

**FIRST FORFEITURE ALLEGATION**

13. As a result of committing the offense alleged in Count One of this Indictment, DANIEL PAGANO, a/k/a "Danny," and MICHAEL PALAZZOLO, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1963,

    a. any interest acquired or maintained in violation of section 1962;

    b. any property constituting, or derived from, any proceeds obtained, directly or indirectly, from racketeering activity in violation of section 1962, including, but not limited to, a sum of money representing the amount of proceeds obtained as a result of the racketeering conspiracy offense alleged in Count One of this Indictment.

**SECOND FORFEITURE ALLEGATION**

14. As a result of committing the offense alleged in Count Two of this Indictment, MICHAEL PALAZZOLO, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, any and all property, real or personal, constituting or derived from any proceeds traceable to the offense alleged in Count Two of this Indictment.

## Substitute Asset Provision

15. If any of the above described forfeitable property, as a result of any act or omission of the defendants:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C.

§ 1963(m) and 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property.

(Title 18, United States Code Sections, Sections 492, 981(a)(1)(c) and 982(a)(2)(b), Title 21, United States Code, Section 853, and Title 28, United States Code, Section 2461.)

_____  _____
FOREPERSON                        PREET BHARARA
                                  United States Attorney

11