*indictment returned*
*courtflow: 1 min.*

ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA           :
                                   :
          - v. -                   :   **SUPERSEDING INDICTMENT**
                                   :
MICHAEL PALAZZOLO,                 :   S1 14 Cr. 523 (RA)
                                   :
          Defendant.               :
                                   :
- - - - - - - - - - - - - - - - - x

**COUNT ONE**
(Racketeering Conspiracy)

The Grand Jury charges:

1.  At all times relevant to this Superseding Indictment, MICHAEL PALAZZOLO, the defendant, was an associate of the Genovese Organized Crime Family. The Genovese Organized Crime Family was a criminal organization whose members and associates engaged in crimes including extortion, loansharking, gambling, and other crimes.

2.  The Genovese Organized Crime Family, including its leadership, membership, and associates, constituted an "enterprise," as that term is defined in Title 18, United States Code, Section 1961(4) -- that is, a group of individuals associated in fact. This enterprise was engaged in, and its activities affected, interstate and foreign commerce. The Genovese Organized Crime Family was an organized criminal group based in New York City that operated in the Southern District of

New York and elsewhere and constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3. The Genovese Organized Crime Family was part of a nationwide criminal organization known by various names, including the "Mafia" and "La Cosa Nostra" ("LCN"), which operated through entities known as "Families." In addition to the Genovese Organized Crime Family, five other Families operated in the New York City and New Jersey area, namely, the Gambino Organized Crime Family of LCN, the Luchese Organized Crime Family of LCN, the Colombo Organized Crime Family of LCN, the Bonanno Organized Crime Family of LCN, and the Decavalcante Organized Crime Family of LCN.

4. The Genovese Organized Crime Family operated through groups of individuals known as "crews" and "regimes," most of which were based in New York City. Each "crew" had as its leader a person known as a "Caporegime," "Capo," "Captain," or "Skipper," and consisted of "made" members, sometimes known as "Soldiers," "wiseguys," "friends of ours," and "good fellows." Soldiers were aided in their criminal endeavors by other trusted individuals, known as "associates," who sometimes were referred to as "connected" or identified as "with" a Soldier or other member of the Family. Associates participated

in the various activities of the crew and its members. In order for an associate to become a made member of the Family, the associate must first be of Italian descent and typically needed to demonstrate the ability to generate income for the Family and/or the willingness to commit acts of violence. Each Capo was responsible for supervising the criminal activities of his crew and providing Soldiers and associates with support and protection. In return, the Capo typically received a share of the illegal earnings of each of his crew's Soldiers and associates, which was sometimes referred to as "tribute."

     5. Above the Capos were the highest-ranking members of the Genovese Organized Crime Family, commonly referred to as the "Administration." The head of the Genovese Organized Crime Family was known as the "Boss," who was ordinarily assisted by an "Underboss" and a "Consigliere," or counselor. The Boss, Underboss, and Consigliere were responsible for, among other things, setting policy, resolving disputes between and among members of the Genovese Organized Crime Family, and resolving disputes between members of the Genovese Organized Crime Family and members of other criminal organizations. The Administration of the Genovese Organized Crime Family was also responsible for overseeing the criminal activities of the Family's Capos,

in the various activities of the crew and its members. In order for an associate to become a made member of the Family, the associate must first be of Italian descent and typically needed to demonstrate the ability to generate income for the Family and/or the willingness to commit acts of violence. Each Capo was responsible for supervising the criminal activities of his crew and providing Soldiers and associates with support and protection. In return, the Capo typically received a share of the illegal earnings of each of his crew's Soldiers and associates, which was sometimes referred to as "tribute."

    5. Above the Capos were the highest-ranking members of the Genovese Organized Crime Family, commonly referred to as the "Administration." The head of the Genovese Organized Crime Family was known as the "Boss," who was ordinarily assisted by an "Underboss" and a "Consigliere," or counselor. The Boss, Underboss, and Consigliere were responsible for, among other things, setting policy, resolving disputes between and among members of the Genovese Organized Crime Family, and resolving disputes between members of the Genovese Organized Crime Family and members of other criminal organizations. The Administration of the Genovese Organized Crime Family was also responsible for overseeing the criminal activities of the Family's Capos,

Soldiers and associates, and was at times called upon to make decisions regarding those criminal endeavors.

6. The Boss, Underboss, and Consigliere supervised, supported, protected, and disciplined the Capos, Soldiers, and associates, and regularly received reports regarding their various activities. In return for their supervision and protection, the Boss, Underboss, and Consigliere typically received part of the illegal earnings of each crew.

7. The Genovese Organized Crime Family has taken significant steps to protect and insulate its Administration members from detection and scrutiny by law enforcement. These steps include appointing multi-member committees, and/or "panels," to perform the function of Administration positions, including the Boss, and to oversee the daily affairs of the Genovese Organized Crime Family; and naming temporary, or "Acting" Bosses and other Administration positions.

The Defendant

8. At all times relevant to this Superseding Indictment, MICHAEL PALAZZOLO, the defendant, was an associate of the Genovese Organized Crime Family. In this capacity, PALAZZOLO participated in and profited from various crimes, which PALAZZOLO committed along with other members and associates of the Genovese Organized Crime Family.

## Purposes of the Enterprise

9. The purposes of the enterprise included the following:

    a. Enriching the leaders, members, and associates of the enterprise through extortion, loansharking, gambling, and other crimes;

    b. Preserving and augmenting the power, territory, and financial profits of the enterprise through intimidation, violence, and threats of physical and economic harm;

    c. Keeping victims and citizens in fear of the enterprise and its leaders, members, and associates by: (i) identifying the enterprise, its members, and its associates with La Cosa Nostra or the "Mafia;" (ii) causing and threatening to cause economic harm; and (iii) committing and threatening to commit physical violence; and

    d. Protecting the enterprise and its members and associates from detection and prosecution by law enforcement authorities through acts of intimidation and violence against potential witnesses to crimes committed by members of the enterprise.

## The Racketeering Conspiracy

10.     From at least in or about 2007, up to and including the date of this Superseding Indictment, in the Southern District of New York and elsewhere, MICHAEL PALAZZOLO, the defendant, and others known and unknown, being persons employed by and associated with the racketeering enterprise described in Paragraphs 1 through 9 above, namely, the Genovese Organized Crime Family, which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to violate Title 18, United States Code, Section 1962(c), to wit, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of multiple:

(a)     Acts and threats involving extortion, in violation of New York State Penal Law, Sections 155.40, 105.10, and 110.00;

(b) Acts indictable under Title 18, United States Code, Section 1951 (relating to extortion);

(c) Acts indictable under Title 18, United States Code, Sections 892 and 894 (relating to extortionate credit transactions);

(d) Acts involving the operation of illegal gambling business, in violation of New York State Penal Law, Sections 225.00, 225.05, and 225.10;

(e) Acts indictable under Title 18, United States Code, Section 1955 (relating to the prohibition of illegal gambling businesses); and

(f) Acts indictable under Title 18, United Sates Code, Section 1512 (relating to witness tampering).

11. It was part of the conspiracy that the defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

(Title 18, United States Code, Section 1962(d).)

### COUNT TWO
(Conspiracy to Commit Assault in Aid of Racketeering)

The Grand Jury further charges:

12. At all times relevant to this Superseding Indictment, the Genovese Organized Crime Family, as more fully described in Paragraphs One through Nine of Count One of this Superseding Indictment, which are realleged and incorporated by reference as though set forth fully herein, constituted an

enterprise as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact which was engaged in, and the activities of which affected, interstate and foreign commerce. The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

13. At all times relevant to this Superseding Indictment, the above-described Enterprise, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely acts and threats involving extortion and gambling in violation of New York Penal Law and punishable by imprisonment for more than one year; and acts indictable under Title 18, United States Code, Sections 892 and 894 (relating to extortionate credit transactions), 1951 (extortion), and 1955 (the operation of an illegal gambling business).

14. From at least in or about October 2010, up to and including at least in or about winter 2011, in the Southern District of New York and elsewhere, MICHAEL PALAZZOLO, the defendant, and others known and unknown, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing of pecuniary value from the Genovese Organized

Crime Family, and for the purpose of gaining entrance to and maintaining and increasing position in the Genovese Organized Crime Family, an enterprise engaged in racketeering activity, as described above, combined, conspired, confederated, and agreed, together and with each other, to assault an individual and thereby cause serious bodily injury, to wit, PALAZZOLO and other co-conspirators not named as defendants herein agreed to assault and injure a victim ("Victim-1") in retaliation for Victim-1's suggesting that PALAZZOLO was cooperating with the Government in its investigation of organized crime.

(Title 18, United States Code, Section 1959(a)(6).)

### COUNT THREE
(Attempted Assault in Aid of Racketeering)

The Grand Jury further charges:

15. Paragraphs 12 and 13 of Count Two of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

16. From at least in or about October 2010, up to and including at least in or about winter 2011, in the Southern District of New York and elsewhere, MICHAEL PALAZZOLO, the defendant, and others known and unknown, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing of pecuniary value from the Genovese Organized Crime Family, and for the purpose of gaining entrance to and

maintaining and increasing position in the Genovese Organized Crime Family, an enterprise engaged in racketeering activity, as described above, attempted to assault an individual and thereby cause serious bodily injury, and aided and abetted and willfully caused the same, to wit, PALAZZOLO and other co-conspirators not named as defendants herein attempted to assault and injure Victim-1 in retaliation for Victim-1's suggesting that PALAZZOLO was cooperating with the Government in its investigation of organized crime.

(Title 18, United States Code, Sections 1959(a)(6) and 2.)

## COUNT FOUR
### (Conspiracy to Commit Extortion)

The Grand Jury further charges:

17. From at least in or about March 2012, up to and including at least in or about October 2012, in the Southern District of New York and elsewhere, MICHAEL PALAZZOLO, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit extortion, as that term is defined in 18 U.S.C. § 1951(b)(2), by obtaining money and property from and with the consent of another person, which consent would have been and was induced by the wrongful use of actual and threatened force, violence, and fear, and thereby would and did obstruct, delay, and affect commerce and the movement of

articles and commodities in commerce, as that term is defined in 18 U.S.C. § 1951(b)(3), to wit, PALAZZOLO and other co-conspirators, not named as defendants herein, used threats of force to attempt to collect payment from an individual who they believed robbed one of the co-conspirators of marijuana.

(Title 18, United States Code, Section 1951.)

## COUNT FIVE
### (Attempted Extortion)

The Grand Jury further charges:

18.  From at least in or about March 2012, up to and including at least in or about October 2012, in the Southern District of New York and elsewhere, MICHAEL PALAZZOLO, the defendant, and others known and unknown, willfully and knowingly attempted to commit extortion, as that term is defined in 18 U.S.C. § 1951(b)(2), by obtaining money and property from and with the consent of another person, which consent would have been and was induced by the wrongful use of actual and threatened force, violence, and fear, and thereby would and did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in 18 U.S.C. § 1951(b)(3), and aiding and abetted the same, to wit, PALAZZOLO and other co-conspirators, not named as defendants herein, used threats of force to attempt to collect payment from

an individual who they believed robbed one of the co-conspirators of marijuana.

(Title 18, United States Code, Sections 1951 and 2.)

## COUNT SIX
### (Conspiracy to Commit Extortion)

The Grand Jury further charges:

19. From at least in or about October 2010 up to and including at least in or about December 2010, in the Southern District of New York and elsewhere, MICHAEL PALAZZOLO, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit extortion, as that term is defined in 18 U.S.C. § 1951(b)(2), by obtaining money and property from and with the consent of another person, which consent would have been and was induced by the wrongful use of actual and threatened force, violence, and fear, and thereby would and did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in 18 U.S.C. § 1951(b)(3), to wit, PALAZZOLO and other co-conspirators not named as defendants herein used threats of force to attempt to collect payment from an individual who they believed owed money to PALAZZOLO's co-conspirator in connection with an excavation contract.

(Title 18, United States Code, Section 1951.)

## COUNT SEVEN
### (Attempted Extortion)

The Grand Jury further charges:

20. From at least in or about October 2010 up to and including at least in or about December 2010, in the Southern District of New York and elsewhere, MICHAEL PALAZZOLO, the defendant, and others known and unknown, willfully and knowingly attempted to commit extortion, as that term is defined in 18 U.S.C. § 1951(b)(2), by obtaining money and property from and with the consent of another person, which consent would have been and was induced by the wrongful use of actual and threatened force, violence, and fear, and thereby would and did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in 18 U.S.C. § 1951(b)(3), and did aid and abet the same, to wit, PALAZZOLO and other co-conspirators, not named as defendants herein, used threats of force to attempt to collect payment from an individual who they believed owed money to PALAZZOLO's co-conspirator in connection with an excavation contract.

(Title 18, United States Code, Sections 1951 and 2.)

## FIRST FORFEITURE ALLEGATION

21. As a result of committing the offenses alleged in Counts One, Two, and Three of this Superseding Indictment,

13

MICHAEL PALAZZOLO, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1963,

      a.   any interest acquired or maintained in violation of section 1962;

      b.   any property constituting, or derived from, any proceeds obtained, directly or indirectly, from racketeering activity in violation of section 1962, including, but not limited to, a sum of money representing the amount of proceeds obtained as a result of the racketeering conspiracy offenses alleged in Counts One, Two and Three of this Superseding Indictment.

## SECOND FORFEITURE ALLEGATION

22.   As a result of committing the offenses alleged in Counts Four, Five, Six and Seven of this Superseding Indictment, MICHAEL PALAZZOLO, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, any and all property, real or personal, constituting or derived from any proceeds traceable to the offense alleged in Counts Four, Five, Six and Seven of this Superseding Indictment.

### Substitute Asset Provision

23.   If any of the above described forfeitable property, as a result of any act or omission of the defendant:

14

          (1) cannot be located upon the exercise of due diligence;

          (2) has been transferred or sold to, or deposited with, a third person;

          (3) has been placed beyond the jurisdiction of the Court;

          (4) has been substantially diminished in value; or

          (5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 1963(m) and 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

    (Title 18, United States Code Sections, Sections 492, 981(a)(1)(c) and 982(a)(2)(b), Title 21, United States Code, Section 853, and Title 28, United States Code, Section 2461.)

_____  
FOREPERSON

_Preet Bharara_  
_____  
PREET BHARARA  
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

MICHAEL PALAZZOLO,
Defendant.

SUPERSEDING INDICTMENT

S1 14 Cr. 523 (RA)

(Title 18, United States Code, Sections
1951, 1959, and 1962(d)).

PREET BHARARA
United States Attorney.